# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IRA B. HARRIS, by and through | ) | |
| his next friend, DARLENE HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:05CV217 SNLJ |
| | ) | |
| GARY KEMPKER et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a summary judgment motion filed by defendants Nolen, Gibbs, Payne, Davis, and Correctional Medical Services, Inc. (#87) on August 28, 2008. Plaintiff filed a response (#97) on October 29, 2008. Defendants filed a reply (#99) on November 5, 2008.

## I. Statement of the Case

Plaintiff Ira B. Harris is an inmate confined by the Missouri Department of Corrections ("MDOC") for the past 19 years. He is serving six life sentences, three forty-year sentences, and one thirty-year sentence. Plaintiff suffers from severe mental illnesses including chronic paranoid schizophrenia, bi-polar disorder, and antisocial personality disorder. These conditions cause several symptoms including auditory hallucinations and paranoid ideations. The "voices" heard by the plaintiff command him to attempt suicide and refuse his medications.

Plaintiff's claims against all of the named-defendants allegedly arise from February 2003, to the present, during his confinement at the Potosi Correctional Center, Southeast Correctional Center ("SECC"), and Eastern Reception Diagnostic and Correctional Center. The parties defendant to this motion are Toyna Nolen, Susie Gibbs, Amanda Payne (now Amanda

Poindexter), Kerrie Davis, and Correctional Medical Services, Inc. ("CMS"). The MDOC contracts with CMS to provide medical and dental services to inmates in MDOC facilities. Defendants Nolen, Gibbs, Payne, and Davis were licensed practical nurses ("LPN") employed by CMS and providing medical care at the SECC where plaintiff was housed from June 26, 2003, to February 2006. Each nurse, however, was only employed for a portion of the time plaintiff was housed at SECC.

Plaintiff's second amended complaint alleges that all defendants, acting under the color of state law, deprived him of his Constitutional Rights in violation of 42 U.S.C. § 1983. He alleges that all defendants, jointly and severally, in their individual and official capacities, subjected him to cruel and unusual punishment in violation of the Eight Amendment by showing indifference to his welfare and failing to provide necessary mental health and medical care to him. In particular, plaintiff claims that he was denied access to care and treatment and was denied his prescribed medications which caused him to become suicidal on several occasions. As to the parties defendant to this motion, plaintiff specifically alleges that there were "systemic and systematic deficiencies" that led to a failure to provide necessary care and treatment.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## III. Defendants' Motion for Summary Judgment

### A. Preliminary Matters

This Court must begin by addressing two concerns raised by defendants in their reply to plaintiff's memorandum in opposition.

#### 1. Dr. Bruce Harry

Defendants argue that the deposition of Dr. Bruce Harry should not be considered for the purpose of this summary judgment motion because he was not disclosed by plaintiff as an expert witness. Dr. Harry is a psychiatrist at the Fulton State Hospital. He was deposed in this case for the limited purpose of establishing whether plaintiff required the appointment of a next of friend. Defendants correctly point out that he has not been identified or disclosed as an expert witness under Federal Rule of Civil Procedure 26(a)(2). However, Dr. Harry did treat the plaintiff approximately 12 years before this case was filed and then again beginning approximately 2 years before the case was filed. A treating physician may testify as a fact witness without being disclosed as an expert but only to the extent the testimony relates to the actual treatment of the party at issue. Therefore, although Dr. Harry's testimony relating to the plaintiff's treatment will be considered, any of his statements and opinions outside the scope of facts related to plaintiff's treatment will not be considered for the purposes of this summary judgment motion.

### 2. Additional Uncontroverted Facts

It also appears to this Court that plaintiff provided additional uncontrovered facts to the Court in its response, but failed to comply with E.D. Mo. Local Rule 7-401(E) which requires separately numbered paragraphs. Plaintiff did, however, adequately cite to the record to establish each fact given. Although discerning the uncontroverted fact is more difficult, it appears that defendants were able to adequately respond to these additional facts in their reply brief. Keeping in mind this difficulty, the Court will still consider these additional facts where uncontroverted.

### B. Standard for Eighth Amendment Violation

A prisoner's Eighth Amendment rights are violated if prison officials exhibit deliberate indifference to the prisoner's serious medical needs. Farmer v. Brennan, 511 U.S. 825 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). A claim involves both an objective and subjective

standard. <u>Estelle</u>, 492 U.S. at 103. It is the plaintiff's burden to demonstrate "(1) that he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000). Part two of plaintiff's burden involves the subjective standard under which an official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety. <u>Farmer</u>, 511 U.S. at 837. "[T]he official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> The Eighth Circuit has defined a "serious medical need" as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognized the necessity for a doctor's attention." <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995), *quoting* <u>Johnson v. Busby</u>, 953 F.2d 329, 351 (8th Cir. 1991). Medical malpractice, inadvertent failure to provide adequate medical care or simple negligence does not amount to a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. Medical malpractice does not amount to deliberate indifference merely because the victim is a prisoner. <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1343 (8th Cir. 1997), *citing* <u>Estelle</u>, 429 U.S. at 106. Generally, indifference is established by a failure to provide medical care, or to deliberately block medical care, despite the knowledge that the prisoner requires medical attention.

Under the standard provided by <u>Jolly</u> this Court begins by deciding whether plaintiff has established an objectively serious medical need. The deposition of the plaintiff as well as his extensive medical record establishes that he has been diagnosed with serious mental illnesses that cause him to harm himself and others. There is no doubt that plaintiff had objectively serious medical needs. To determine whether the defendants actually knew of these needs and deliberately disregarded the needs, the evidence regarding each defendant must be discussed

individually.  Although the claims in plaintiff's first amended complaint are addressed to all defendants regardless of whether a defendant was individually responsible for or had any control over the complained of action, this Court will address only the individual defendant's knowledge and actions regarding those events, decisions, and/or actions in which they were involved or for which they were responsible according to the uncontroverted facts established in this summary judgment proceeding.

### C.  Defendant nurses

As noted, plaintiff brings his lawsuit for damages, pursuant to 42 U.S.C. § 1983, claiming that defendant nurses -- Nolen, Gibbs, Payne, and Davis -- violated his Eighth Amendment rights. Plaintiff claims that there were several instances during his time at SECC that he did not receive his prescribed medications.  He makes three general allegations against the nurses concerning this failure: (1) the nurses failed to timely order his medication to insure no lapses in treatment, (2) they failed to adequately monitor his blood work which was required before medication could be ordered, and (3) they failed to procure the medication from another source when the medication was out of stock.  Allegations one and two are dependent on each other because blood work was a necessary pre-requisite for the renewal of plaintiff's Clozaril prescription.

#### 1.  Amanda Payne

During her employment at SECC defendant Payne was employed as a LPN.  In her deposition, she stated that her medical duties did include dispensing medication and she had at times been in charge of dispensing medication to Mr. Harris.  Defendant Payne testified that although she remembered times in which plaintiff had not received his medication, it was because plaintiff himself refused.  Defendant Payne was not responsible for any ordering of prescriptions nor for making sure that plaintiff arrived at his blood work appointments.  Although she stated she

knew Mr. Harris's medication was given for mental health reasons, there is no evidence that she knew the degree of Mr. Harris' mental health issues. The record demonstrates conclusively that the defendant Payne was only responsible for dispensing plaintiff's medication, never acted intentionally to withhold his medications, and was not aware of any substantial risk of serious harm that could result from this failure.

### 2. Defendant Kerri Davis

During her employment at SECC defendant Davis was working as a LPN. Among other duties, she was responsible for dispensing medication. She was aware of only one day in which plaintiff did not receive his medication because the medication was not available, and she knew of no specific instance involving herself or others where medication that was unavailable was obtained from an outside pharmacy, or that it was possible to do so. Thus, there is no evidence that she could have obtained the medication from a different source but chose not to out of indifference. Further, defendant Davis was not responsible for the ordering of prescriptions nor for making sure that plaintiff arrived at his blood work appointments to determine whether additional medications needed to be ordered. Finally, despite knowing that plaintiff suffered from schizophrenia, there is no evidence that defendant was aware of any substantial risk of serious harm (and in particular the risk that plaintiff would become suicidal) associated with plaintiff not receiving a dose of his medication. Therefore, there is no evidence that defendant Davis was ever deliberately indifferent.

### 3. Defendant Susan Gibbs

Susan Gibbs was employed by CMS at SECC as a LPN. She was also responsible for dispensing medication. She was aware of at least one incident when plaintiff did not receive his medication, but the reason for that failure is not clear from the record. However, there is no

allegation from the plaintiff or other evidence on the record that there was an intentional withholding of available medication, and she stated that there was never an occasion where she intentionally refused plaintiff his medication. Although she agreed that it was important for medication to be administered regularly there is no evidence she knew of any serious risks -- such as suicide -- associated with plaintiff's failure to receive every does of his medication. Further, she was not responsible for ordering plaintiff's prescription or making sure that he timely received his blood work. There is no evidence that defendant ever deliberately disregarded plaintiff's medical needs.

### 4. Defendant Tonya M. Nolen

Defendant Nolen worked as a LPN for CMS at SECC from approximately 2002-04. She was responsible for drawing labs and administering medications. She was also responsible for sending lab results to the pharmacy to order plaintiff's prescription. Plaintiff argues in his opposition to summary judgment that there is evidence that defendant Nolen intentionally withheld medication that was present, and in support, he cites his deposition testimony. It is true that plaintiff initially states that defendant Nolen withheld his medication, but he then concedes that he did not know whether the withholding was intentional. In any event, a review of the entire relevant portion of his deposition makes clear that defendant Nolen told him he could not have his medication because it was out of stock. The relevant portion reads as follows:

> Q: Do you know why or remember why in July of '03, I'm sorry, '03, why Ms. Nolen didn't have [plaintiff's Clozaril]?
>
> A: I don't remember why, but I believe it was because somebody failed to take my lab, my lab, my blood work. . . .
>
>  . . .

Q: Okay. What did Miss Nolen tell you that she needed to do or was going to do in order for you to obtain the medication?

A: She never told me anything, she just said she didn't have my meds.

. . . .

Q: Do you have any reason to believe that Ms. Nolen intentionally failed to give you your medication?

A: Well, if I can – I've had them give them – I've had where she would not give them to me and then the person on the next shift would. So, it was hard for me to determine if she was giving them to me intentionally or not intentionally.

Q: Fair to say you don't – you don't know?

A: Well, I can't – I can't – I can't say that it was intentionally or unintentionally, I could just say that I didn't receive them as I was supposed to.

. . .

Q: Did Ms. Nolen – or I'm sorry, did Ms. Gibbs tell you or give you any indication why she couldn't provide you the medication?

A: I'm sorry if I – if I said Miss Nolen didn't give me a reason. Did I say that? I'm sorry if I said that she didn't give me a reason why she couldn't give them to me, because all the nurses told me they couldn't give them to me because they weren't there, that I didn't have them. So that's why Miss Gibbs told me she couldn't give them to me, because they wasn't there.

Plaintiff's Dep p. 31-33. This is consistent with defendant Nolen's deposition testimony in which she admits that plaintiff did not receive his medication when it was out of stock, but she never intentionally withheld his prescriptions.

The record also demonstrates that plaintiff's lab work was required before defendant Nolen could order his medication, but she was not responsible for making sure plaintiff was present for his lab work appointment. Instead, plaintiff's medical records demonstrate that other medical personnel were properly notified when plaintiff did not come for an appointment to do his

lab work, so that they could address the issue. In addition, there is no evidence that defendant Nolen knew of any serious risk --including suicide -- associated with plaintiff not receiving his medication. Nor is there any evidence that she was in a position to take additional steps to ensure that he timely received his medications but failed to do so out of indifference. Under these circumstances, there is no evidence that defendant Nolen deliberately disregarded plaintiff's medical needs.

In sum, despite failures to receive his medication, there is no evidence on the record that the individual CMS nurses ever were aware of any serious medical risk to plaintiff that they deliberately chose to ignore. As such, these defendants are entitled to summary judgment.

### D. Central Medical Services

Defendant CMS raises two alternative arguments in support of its motion for summary judgment. First, CMS argues that plaintiff's second amended complaint fails to state a claim against CMS under 42 U.S.C. § 1983. Second, CMS argues that to the extent plaintiff has pled a § 1983 claim against CMS, plaintiff is unable to present sufficient evidence to support a claim that CMS violated plaintiff's constitutional rights.

To successfully raise a § 1983 claim the plaintiff must show that there is "a pattern of persistent and widespread unconstitutional practices which become so apparent and well settled as to have the effect and force of law." Jane Doe A., by and through Jane Doe B. v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Even without formal approval through official decision making channels, any "person . . . may be sued for constitutional deprivations visited pursuant to government custom." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978).

Defendant CMS claims that the plaintiff has not pled or alleged that CMS maintains any policy, practice or custom that is unconstitutional or the moving force behind his claimed injury. This Court disagrees. First, this Court finds that plaintiff did allege facts sufficient to raise a § 1983 claim in his second amended complaint. Paragraph 13 states that the § 1983 deprivations alleged in the following paragraphs apply to all defendants. Paragraph 14(d) then alleges that defendants showed intentional indifference to plaintiff's medical needs "[t]hrough systemic and systematic deficiencies have failed to provide necessary care and treatment to Plaintiff." Plaintiffs need only plead enough facts to put defendants on notice as to the charges being brought. This Court finds that specifically raising a § 1983 claim and then stating that the violation occurred through systematic deficiencies is enough to initially raise a § 1983 claim based on violation through policy, practice, or custom.

Further, this Court also finds that plaintiff has alleged sufficient facts to maintain a claim against defendant CMS for a § 1983 violation. Plaintiff challenges three policies or customs of CMS as being constitutionally deficient:

(1) The custom or policy of not keeping Clozaril in stock and on hand.

(2) The custom or policy of not obtaining missing medicine from sources immediately available outside the prison.

(3) The custom or policy of placing responsibility for obtaining health care on the inmates themselves.

Plaintiff's medical records demonstrate that CMS was aware that plaintiff suffered from mental illnesses that caused him to suffer from a range of symptoms including auditory hallucinations and paranoia. More than once he informed medical personnel that he believed the

medical staff was trying to harm him. He was disciplined for keeping his medication in his cell, though the medical file stated he did so out of fear that he would again be denied medication that was out of stock.

In addition, defendant was aware that plaintiff, due to his illness, was having problems being responsible for his own care, and in particular the responsibility for reporting to the clinic for lab work at regular intervals to maintain his Clozaril prescription. His failure to have lab work done resulted in lapses of his medication. Lapses in his medication would cause the voices to increase and, based on the medical records, could cause him to become threatening and harm himself as well as others. Defendant CMS seems to maintain in its reply brief that because it is not CMS's "policy" or "custom" to deny medication there can be no § 1983 violation. However, if plaintiff was unable to adequately obtain medication under CMS's policies and CMS was aware of this failure and made no attempts to alter the methods by which the plaintiff received medical care, then defendant CMS demonstrated pattern of deliberate indifference opening itself up to liability under § 1983.

In sum, this Court finds that the record calls into question whether plaintiff is adequately able to attend to his own medical care. The record also establishes that there were lapses in plaintiff's medical treatment and that CMS was made aware of these lapses. Ultimately, the Court finds that it remains in controversy whether CMS was deliberately indifferent to plaintiff's medical care needs. However, as noted above, plaintiff's second amended complaint directs all claims to all defendants. This Court finds there is nothing to establish that CMS was responsible for issues relating to plaintiff's housing and thus, is entitled to summary judgment on those issues. Accordingly, the findings of this Court preclude the granting of summary judgment in favor of

CMS on issues relating to plaintiff's medical care but support a granting of summary judgment on all issues relating to plaintiff's housing.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED** as to defendants Toyna Nolen, Susie Gibbs, Amanda Payne, and Kerrie Davis in all regards.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment for defendant Correctional Medical Services, Inc is **GRANTED** on issues relating to plaintiff's housing and **DENIED** on all issues relating to plaintiff's medical care.

Dated this __19th__ day of March, 2009.

_____

UNITED STATES DISTRICT JUDGE